## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 15 2019, 10:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rashawn M. Appleton, *Appellant-Defendant,* | August 15, 2019 |
| | Court of Appeals Case No. 18A-CR-2507 |
| v. | Appeal from the Vigo Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable John T. Roach, Judge |
| | Trial Court Cause No. 84D01-1612-F5-3319 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Rashawn Appleton was found guilty of Level 5 felony dealing in marijuana, Level 6 felony maintaining a common nuisance, and Class B misdemeanor possession of marijuana. After merging the dealing and possession counts, the trial court entered judgments of conviction for dealing in marijuana and maintaining a common nuisance and sentenced Appleton to an aggregate sentence of four and one-half years to be served as a direct placement on work release. Appleton now appeals his convictions, alleging that the two convictions for dealing in marijuana and maintaining a common nuisance were based on the same actual evidence and that, therefore, convictions for both violate principles of double jeopardy. Concluding that the conviction of maintaining a common nuisance must be vacated due to a double jeopardy violation, we affirm in part, reverse in part, and remand.

# Facts and Procedural History

[2] On December 7, 2016, J.T. Pierce, an officer with the Terre Haute Police Department who was also appointed to be a task force officer with the United States Marshal Service, executed a warrant for Appleton's arrest. Officer Pierce's partner, Rob Pitts, used federal software to locate Appleton at a residence on 5th Avenue in Terre Haute. When Officers Pierce and Pitts arrived at that address, they observed two vehicles, a Chrysler 300 and a Dodge Nitro, parked "at . . . or near [the] residence." [Transcript of] Jury Trial,

Volume 2 at 9. Officer Pierce verified that the vehicles were registered to Appleton by checking records from the Indiana Bureau of Motor Vehicles.

[3] As Officers Pierce and Pitts surveilled the residence, they observed two additional vehicles "pull[] up" and park near the residence "[w]ithin seconds of each other." *Id.* at 10. A male exited one vehicle. A female exited the other and removed two children from her vehicle. The man, woman, and children walked up to the 5th Avenue residence. Appleton stepped outside, helped the woman with her children, and everyone entered the residence. Officer Pitts then placed a request for backup. Deputy U.S. Marshal Greg Snyder and Terre Haute Police Department Detectives Marty Dooley and Marcia Bahr arrived approximately five minutes later.

[4] Detectives Dooley and Bahr went to the rear of the residence to prevent Appleton from attempting to escape through the back door when the officers executed the warrant. The detectives observed another vehicle "parked out back that had two people in[side.]" *Id.* at 12. The detectives detained the individuals in the vehicle and secured them for purposes of officer safety.

[5] One of the occupants of the vehicle had a plastic bag that contained a plant-like material that smelled like marijuana. The occupants told the detectives that they had purchased seventy dollars-worth of marijuana at the 5th Avenue residence from a person named "Mannie." *Id.* at 50. The detectives confiscated the marijuana but allowed the occupants of the car to go for the time being.

[6] Meanwhile, Officer Pierce and Deputy Snyder knocked on the front door of the 5th Avenue residence. Appleton came to the door, stepped outside, and was immediately handcuffed and placed into custody. When Appleton opened the door, Pierce and Snyder detected a strong odor of raw and burnt marijuana emanating from the residence.

[7] After Appleton was placed into custody, another man exited the house. The man initially provided a false name, but the officers eventually identified him as Emmanuel Jones. The officers discovered that Jones had an active arrest warrant, so they placed him into custody as well. They also learned that Jones was the "Mannie" identified by the occupants of the vehicle that Detectives Dooley and Bahr had detained. *Id.*

[8] Due to the strong odor of marijuana emanating from the residence, Detective Dooley left to apply for a search warrant to search the house as well as the Dodge Nitro that was parked in the driveway. Remaining law enforcement secured the residence and directed the remaining occupants (two men, a woman, and three children) to stay seated in the front room.[1] The woman voluntarily explained to law enforcement that Appleton and Jones had lived at the 5th Avenue residence for approximately three months.

---

[1] At least five adults, including Appleton and Jones, were inside the residence when law enforcement executed the warrant for Appleton's arrest.

[9] Detective Dooley returned a short time later with the search warrant. During a search of the basement of the home, the officers found a trashcan that contained bags which, in turn, contained marijuana packaged in multiple, smaller sealed sandwich bags. The officers also found four or five bags of marijuana located underneath pallets. On the main level of the home, the police found a semi-automatic weapon. They also found a bill from Duke Energy; a bill from Indiana American Water; and a payment stub from Frontier Communications, all three bearing Appleton's name and the 5th Avenue address; $450.00; a set of digital scales; and a large marijuana bud. When the officers searched the mailbox at the residence, they found a small amount of marijuana along with swisher sweet cigars, which are used to roll and smoke marijuana and make the marijuana "taste[] a little bit better because it's sweeter." *Id.* at 85.

[10] Pursuant to the search warrant secured by Detective Dooley, the officers also searched the Dodge Nitro that was parked in the driveway. In the backseat, the officers found approximately fourteen grams of marijuana inside of a backpack.

[11] The Chrysler 300 was parked in front of the residence. The officers observed that marijuana could be seen in the vehicle's cup holder. The officers towed the vehicle to the Terre Haute Police Department and obtained a warrant to search it. Upon executing the search, the officers retrieved the marijuana located in the cup holder and found a handgun underneath the steering column.

[12] In all, law enforcement recovered from the 5th Avenue residence and Appleton's vehicles fourteen bags of marijuana weighing a total of 11.7 pounds.

[13] The State charged Appleton with Level 5 felony dealing in marijuana, Level 6 felony maintaining a common nuisance, and Class B misdemeanor possession of marijuana. A two-day jury trial was held on July 16 and 17, 2018. At trial, the State argued in closing that Appleton was guilty of dealing marijuana as an accomplice because he aided Jones in dealing in marijuana by allowing Jones to "use a residence leased in [Appleton's] name[,] . . . use vehicles leased in [Appleton's] name[, a]nd . . . use a residence that had service and utilities that were in [Appleton's] name." Tr., Vol. 3 at 5. The State also argued that Appleton was guilty of maintaining a common nuisance because he maintained a house, vehicles, and utilities in his name that he knew were being used for the purpose of marijuana dealing.

[14] A jury found Appleton guilty as charged. The trial court merged the possession count into the dealing count and sentenced Appleton to concurrent sentences of four and one-half years for Level 5 felony dealing in marijuana and two years for Level 6 felony maintaining a common nuisance. The sentence was ordered to be served as a direct placement in community corrections work release. Appleton now appeals. Additional facts will be supplied as necessary.

# Discussion and Decision

## I. Standard of Review

[15] Appleton argues that his convictions violate the Double Jeopardy Clause of the Indiana Constitution, claiming specifically that they fail the actual evidence test articulated in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). Whether

convictions violate double jeopardy is a question of law which we review de novo. *Grabarczyk v. State*, 772 N.E.2d 428, 432 (Ind. Ct. App. 2002).

[16] Article 1, section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." In *Richardson*, our supreme court concluded that two or more offenses are the same offense in violation of Article 1, section 14 if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense. 717 N.E.2d at 49. Under the actual evidence test, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. *Id.* at 53. To find a double jeopardy violation under this test, we must conclude that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* There is no double jeopardy violation under the actual evidence test when the evidentiary facts establishing the essential elements of one offense also establish only one or even several of the essential elements of a second offense. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).

[17] Application of this test requires the court to "identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective . . . ." *Id.* at 832. In determining the facts used by the factfinder to establish the elements of each offense, it is appropriate to consider the charging

information, jury instructions, and arguments of counsel. *Id.*; *Richardson,* 717 N.E.2d at 54 n.48.

## II.  Appleton's Convictions

[18]  In order to prove Appleton guilty of Level 5 felony dealing in marijuana as an accomplice, the State had to show that Appleton knowingly or intentionally aided Jones in possessing marijuana with intent to deliver said marijuana having a weight of at least ten pounds.  Ind. Code §§ 35-48-4-10(a)(2), — (d)(2)(A)(i); 35-41-2-4.  To prove Level 6 felony maintaining a common nuisance, the State had to show that Appleton knowingly or intentionally maintained a building, structure, vehicle, or other place that was used for the purpose of using, manufacturing, keeping, offering for sale, selling, delivering, or financing the delivery of a controlled substance.  Ind. Code § 35-45-1-5(c).

[19]  In the final instructions, the jury was instructed as follows regarding aiding in the commission of dealing in marijuana:

> Aiding, inducing or causing Dealing in Marijuana is defined by law as follows: A person who knowingly or intentionally aids another person to commit an offense, commits that offense.  A person may be convicted of Aiding Dealing in Marijuana, even if the other person has not been prosecuted for Dealing Marijuana, has not been conviction [sic] of Dealing Marijuana or has been acquitted of Dealing Marijuana.
>
> Before you may convict the defendant, the State must have proved each of the following element, elements [sic] beyond a reasonable doubt:

1.    The defendant;

2.    knowingly;

3.    aided;

4.    Emmanuel Jones in committing the offense of Dealing Marijuana, as defined as:

    a.    knowingly or intentionally;

    b.    possessing with intent to deliver;

    c.    pure or adulterated marijuana;

    d.    the amount involved was at least ten pounds of marijuana;

5.    by one or more of the following:

    a.    allowing Emmanuel Jones to utilize one or more vehicles registered in his name to deal marijuana and/or;

    b.    by allowing Emmanuel Jones to use the residence leased in his name to deal marijuana, and/or;

    c.    by allowing Emmanuel Jones to use a residence with services and utilities in his name to deal marijuana.

Tr., Vol. 3 at 24-25.

[20] Regarding the maintaining a common nuisance charge, the jury was instructed as follows:

> The crime of Maintaining a Common Nuisance is defined by law as follows: A person who knowingly[] or intentionally maintains a building, structure, vehicle, [or] other place that is used for the purpose of unlawfully using, keeping, offering for sale, selling, or delivering a controlled substance, commits maintaining a common nuisance, a level 6 felony.
>
> To convict the defendant, the State must have proved each of the following beyond a reasonable doubt:
>
> > 1.    The defendant;
> >
> > 2.    knowingly[] or intentionally;
> >
> > 3.    maintained a building, structure, vehicle, [or] other place; and
> >
> > 4.    that was used for the purpose of unlawfully using, keeping, offering for sale, selling, or delivering a controlled substance.

*Id.* at 25-26.

[21] At trial, the evidence presented against Appleton boiled down to the following facts: Appleton was at a residence where more than ten pounds of marijuana were found between the house and the vehicles parked on or near the property; Jones, testifying for the defense, admitted that he had pleaded guilty to dealing in marijuana, maintaining a common nuisance, and possession of marijuana for the incident that occurred at the 5th Avenue residence on December 7, 2016;

the lease for the residence contained Appleton's signature; the Dodge Nitro and the Chrysler 300 were registered in Appleton's name; and utilities for the residence were in Appleton's name.

[22] When we compare the evidence presented at trial and the jury instructions provided, we find that there is a reasonable possibility that the jury used the same evidentiary facts to prove the essential elements of aiding in the commission of dealing in marijuana and the essential elements of maintaining a common nuisance. Appleton's convictions for both violate principles of double jeopardy.

[23] When we find two convictions contravene double jeopardy principles, we may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. *Richardson*, 717 N.E.2d at 54. If it will not, one of the convictions must be vacated. *Id.* Reducing Appleton's conviction for dealing in marijuana to a less serious form does not eliminate the violation, and maintaining a common nuisance does not exist in a less serious form. As such, Appleton's maintaining a common nuisance conviction and sentence must be vacated. *See id.* at 55 (when two convictions cannot stand because of a double jeopardy violation, the conviction with the less severe penal consequences should be vacated). This leaves in place Appleton's conviction and sentence for Level 5 felony dealing in marijuana.

# Conclusion

[24] In conclusion, Appleton's convictions of both Level 5 felony dealing in marijuana and Level 6 felony maintaining a common nuisance violate the Double Jeopardy Clause of the Indiana Constitution. We therefore remand to the trial court to vacate Appleton's conviction and sentence for maintaining a common nuisance.

[25] Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

Baker, J., and Najam, J., concur.